## Case No. 17,424.

### WEST v. RANDALL et al.

### [2 Mason, 181.] [1]

Circuit Court, D. Rhode Island. Nov., 1820.

EQUITY — PARTIES AND PLEADINGS — ADMINISTRATORS AND DISTRIBUTEES — MULTIFARIOUS BILL — WITNESSES — REGISTRATION OF DEEDS — LACHES.

1. It is a general rule in equity, that all persons materially interested in the matter of the bill, as plaintiffs or defendants, ought to be made parties to it, however numerous they may be.

[Cited in Trecothick v. Austin, Case No. 14,164; Bryan v. Stevens, Id. 2,066a.]
[Cited in Northwestern Cement & Concrete Pavement Co. v. Norwegian-Danish Evangelical Lutheran Augsburg Seminary, 43 Minn. 453, 45 N. W. 870. Cited in brief in Wing v. Cooper, 37 Vt. 171.]

2. But there are exceptions to the rule, as where the other party is without the jurisdiction, &c.; so part of a crew of a privateer, suing for prize money. So creditors suing in behalf of all creditors, &c.

[Cited in Wood v. Dummer, Case No. 17,944; Heriot v. Davis, Id. 6,404; Jewett v. Cunard, Id. 7,310; Harrison v. Urann, Id. 6,146; West v. Smith, 8 How. (49 U. S.) 410; Payne v. Hook, 7 Wall. (74 U. S.) 431; Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., Case No. 2,990. Distinguished in Florence Sewing-Mach. Co. v. Singer Manuf'g Co., Id. 4,884. Cited in Omaha Hotel Co. v. Wade, 97 U. S. 21; Hamilton v. Savannah. F. & W. Ry. Co., 49 Fed. 419. Cited in brief in Chicago Trust & Sav. Bank v. Bentz, 59 Fed. 646.]
[Cited in Lawrence v. Rokes. 53 Me. 117; London. Paris & American Bank v. Smith (Cal.) 35 Pac. 1030; Norris v. Bean, 17 W. Va. 661; Oakley v. Hibbard, 1 Pin. 684; Smith v. Ford, 48 Wis. 145, 2 N. W. 150.]

3. And it seems the better opinion, that one heir or next of kin. suing for a distributive share of an estate, cannot maintain his bill in equity, without making the other heirs or next of kin parties, or shewing them to be without the jurisdiction, or within some other exception. But the rule on this subject does not seem to be inflexible.

[Cited in Cassidy v. Shimmin, 122 Mass. 410.]

4. But the administrator upon the estate, where the personalty is concerned, is a necessary party to such a bill, in ordinary cases.

[Cited in Cassidy v. Shimmin, 122 Mass. 412.]

5. A bill cannot be sustained in equity. which is multifarious and embraces distinct matters, affecting distinct parties. who have no common interest in the distinct matters.

[Cited in Society for the Propagation of the Gospel v. Hartland, Case No. 13,155; Pratt

---

v. Thomas, Id. 11,377; Payne v. Hook, 7 Wall. (74 U. S.) 432; Baker v. Portland, Case No. 777.]
[Cited in brief in Sawyer v. Noble, 55 Me. 228.]

6. A co-heir or co-next of kin, is not a competent witness for the plaintiff, in a suit brought for an account of a trust fund, created for the benefit of all the heirs, or next of kin.

7. By the registry act of Rhode-Island, the recording of the deed is necessary to pass real estate as against third persons, but not as between the original parties or their heirs.

[Cited in Hoxie v. Carr, Case No. 6,802; Brown v. Brown, Id. 1,994; Mason v. Crosby, Id. 9,234.]

8. Effect of lapse of time in equity.

[Cited in Coles v. Vanneman, 51 N. J. Eq. 329, 18 Atl. 471.]

[9. The assignment of a bond of defeasance of a deed is good in Rhode-Island, as between the parties, though not attested by witnesses.]
[Followed in Randall v. Phillips, Case No. 11,555.]

This was a bill in equity, brought by William West, of Southridge, in the state of Massachusetts, one of the children and heirs of William West, formerly of Scituate, in the state of Rhode-Island, against Job Randall, a son-in-law of the last mentioned William West, and Jeremiah Phillips, both inhabitants of said Scituate. The bill set forth, that on the 10th day of July, 1792, the said last mentioned William West. was possessed in fee simple of a certain farm in said Scituate, and of a large quantity of personal estate, consisting of stock, farming utensils, and household furniture. That he was also possessed of the right of redemption in a certain other farm in said Scituate, called the Wheeler farm, of which one Simeon Potter, held a mortgage deed; and that he held also sundry notes, demands, and claims, against certain persons mentioned in the said bill; that the said West was also at the same time indebted to sundry persons, mentioned in the bill; that he was advanced in age, and laboring under bodily infirmities, and being desirous to settle all his affairs expeditiously and honestly, and to the satisfaction of all his creditors, and to have the residue of his estate free, and exonerated from all debts and claims, for the support of his family, and the benefit of his heirs at law, the said West, on the day and year abovementioned, entered into an agreement with the said Randall and Phillips. and one Gideon Smith, and one Joseph Battey, which two last mentioned persons had since deceased, all of them being friends and neighbors of the said West, by which agreement. the said four persons undertook to settle and adjust the affairs of the said West. And to enable them to do this. the said West constituted the said persons his agents, attornies. and trustees, and conveyed over to them. all his said property in trust, for the said purposes. And the said four persons at the same time executed a bond of defeasance to the said West, covenanting therein to perform all their agreements; that afterwards Joseph Battey died, and the sur-

---

[1] [Reported by Wm. P. Mason, Esq.]

vivors in whom the property then vested, sold to one William Battey, such a part of the said lands, as produced the sum of $7,000, and such a further part to one Nicholas Thomas, as produced the sum of $2,000. which said sums. the said Job Randall received as agent of the other trustees; that the said Gideon Smith afterwards died. leaving the said Job Randall and Jeremiah Phillips, the only survivors of the said trustees; that afterwards, the said Randall, with a part of the money in his hands, at the request of said West, paid off the mortgage on the Wheeler farm, and with the intent to defraud West, procured a conveyance of the said farm from Potter. the mortgagee, to himself and other persons, unknown to the complainant: that afterwards a bill in equity was filed in the state court of the state of Rhode-Island, against Zachariah Allen. for the purpose of redeeming the farm of West's first mentioned from a mortgage on the same, held by said Allen, and the said Randall and Phillips thereupon paid the amount due, out of the monies in their hands, as beforementioned, and took possession of the said farm, excepting so much thereof as they had previously sold; that on the 10th of March, 1801, the said West wrote a certain paper, recited at large in the said bill, wherein he stated, that on the 19th of July, he sold to said Phillips, Randall, Battey and Smith, his homestead farm, and gave them a warrantee deed, and that at the same time. the said persons gave back to him a deed of defeasance; and that now, by this instrument, in consideration of one thousand dollars, paid him by said Randall, he sold and assigned over to said Randall the said bond of defeasance, and all sums of money due or to grow due thereon, with all the said West's interest therein. and in the lands or real estate therein described. And in the same instrument, he appointed Randall his attorney irrevocable in the premises, with power to prosecute all necessary suits to final judgment. and to compromise, and discharge them. &c. And he therein also covenanted with the said Randall, to make all such further conveyances. covenants, and assurances, to the said Randall, as might be necessary, for the conveying and assuring to the said Randall, all the right. title. and interest, of said West, in the said bond, and in said real estate, and warranted the title of the said bond. And the said bill further set forth, that the said West signed the instrument, but did not call any witness to the signature. nor seal the same; and that he placed the same without delivery among his papers; that afterwards, in the year 1809, the said Randall having access to the said West's papers, clandestinely and fraudulently got possession of the said instrument, then being unsealed, unwitnessed. and unacknowledged. and in like manner caused the same to be sealed and recorded. And that the said West. during his lifetime. never knew or suspected that the said Randall had possessed himself of the

said paper, or procured the same to be sealed or recorded.

The bill further stated, that the said Randall and Phillips. held an undivided and joint possession of all the lands mentioned, and of all the other property of said West, during the lifetime of said West, and since then; and that the said Randall and Phillips, when called on by said West to settle and conclude said trusts, and to convey and deliver said property, promised on the 10th day of July, 1810, so to do, but neglected to do it. That afterwards, in the year 1814, when the said West was on his death bed, he called the said Randall to him and recounted to him the said trusts. and the said Randall's obligations to a faithful surrender of the said property. And that the said West, then and there stated, that the said Randall and Phillips had been amply paid for all their costs and charges, trouble and labour therein, to all which the said Randall assented, and acknowledged the same to be true, and promised to settle said trusts, and forthwith to deliver up all the estates and property aforesaid to the heirs of the said West. And that the said West on the same day died.

The bill further averred, that the amount of the property thus recovered by the said Randall and Phillips, and the rents and profits of it, greatly exceeded the amount of all the costs, damages. trouble and labour sustained by the said Randall and Phillips, and the debts paid by them for the said West.

Phillips. in answer to this bill, admits that said West did convey to the persons mentioned in the bill his estate, on the 19th day of July, 1792; and that a bond of defeasance to him was executed by the same persons in return. And he further stated, that before the said deed and bond were executed, the said West was indebted to him in a large sum of money, lent to said West, by this defendant. And that said West expressly agreed with him. that the land as conveyed, should be held by him as a security for the amount so due, and that Phillips should hold all his right and interest in the farm. so conveyed, until he should be paid by said West. or his representatives after his death. all sums of money due to him from West. And also all sums, which might accrue from the costs. trouble, expense and charges, that he might be put to, in the settlement of a mortgage on the said farm, in favour of one Jencks, and in settling the other concerns of said West. And he averred, that he was put to great cost. trouble, and expense, in settling the business of the said West. He admitted, that he and the other two surviving trustees, (Joseph Battey having previously died,) did sell two hundred acres of said West's farm, to William Battey, for $6,000; and also thirty-six acres to one Nicholas Thomas, for $700, and alleged, that these sums were received by Randall. and had never been accounted for by him either to this defendant. or as he believed, to the other trustee. He further stated. that Randall and himself agreed to purchase out the

interest of Smith in the West farm, and to be jointly interested therein; but that Randall, with an intent to defraud him, took a deed from Smith to himself alone. And prayed, that if the complainant was not allowed to redeem the West farm, a specific performance of the contract between Randall and himself, in relation to the said purchase of Smith, might be decreed. He further stated, that he had never received any of the rents and profits of the said estates, but that Randall had always been in possession of the farm, and received all the profits of the same, and had never accounted with him for his portion of them. That while Randall and himself were contending against the Jenck's mortgage, in a court of equity, it became necessary to make use of the testimony of the said West, but that the testimony of said West could not be admitted, while the equity of redemption remained in him. It was therefore agreed between them, that the said West should release the equity of redemption in the premises to the said Randall and himself, for the purpose of qualifying said West as a witness; but that no consideration was given to said West for his assignment of said bond of defeasance. And that he had always understood from said Randall and West, that there was no other assignment of said bond ever made by said West. The answer further stated, that said West died in 1814, without making a will, and leaving seven heirs, besides the complainant, who ought to have been made parties to the bill. And finally the said Phillips insisted in his answer, that the heirs of said West should not be allowed to redeem said estate, until they had paid and allowed all the demands, and equitable claims, which the defendant might have individually, or as one of the purchasers of an undivided moiety of said estate.

Job Randall, in his answer, also admitted the conveyance made by said West, of the farm and property mentioned in the bill, the sale of a portion of said farm to Battey for the sum of money therein stated, and admitted the payment of the said consideration to him, partly in money, and partly in credits, for sums due from said West to the purchaser, and stated, that the said sums were credited in his account filed with his answer. He also admitted the sale of another portion of said farm to said Thomas, and the payment to him therefor of seven hundred and thirty-three dollars, credited in his said account. He further stated, that said Smith, at the time of the said conveyance, had a claim of $700 against the said farm. And that for the purpose of redeeming the farm from this debt this defendant paid the said sum to said Smith, and received a release and quit claim of all said Smith's interest in the said farm. He further admitted, that said West died intestate, and that the complainant was one of the heirs at law; but he denied, that there was any agreement between the said West, and said Smith, Battey, Phillips, and himself, at the time of making said conveyance, constituting them agents, attorneys,

or trustees of said West, or that there ever was any trust whatever in relation to the premises conveyed, excepting what was contained in the said bond of defeasance. He further stated, that after the execution and delivery of the said deed and bond of defeasance, to wit, on the 10th day of March, 1801, said West was largely indebted to him, for sums of money advanced to, and paid for. said West, for which he had no security. And that West, in consideration thereof, urged him to take an assignment of said bond of defeasance, and a release of all said West's interest in said farm, and the appurtenances, in satisfaction thereof. And on the same day, said West, with his own hand, wrote, signed, sealed, and delivered to him for the consideration of $1,000 an assignment thereof, which sum was then agreed by the said West, to be a just allowance for the monies so advanced. And the said West delivered the said assignment to him at that time; and he denied, that said West placed it as an escrow among his papers, or that he, the defendant, fraudulently obtained possession of it. And he maintained, that by virtue of said assignment he became possessed of an indefeasible estate in fee simple in his own right in said premises. He stated, that he paid the amount due on the Jenck's mortgage beforementioned, and that said Phillips, Smith, and himself thereupon entered into quiet possession of the premises. He stated, in relation to the Wheeler farm mentioned in the bill, that it was conveyed by said West to one Potter, reconveyed to West, and by West conveyed to this defendant and several other persons mentioned in the answer, for the sum of $5,000, which sum was paid to said West, by the defendant and the other persons mentioned. And he denied that the said farm was to be holden by them in trust for said West.

As to the acknowledgments and promises, alleged to have been made by the defendant to said West, whilst said West was on his death bed, the defendant protesting against the truth thereof, alleged, that if any cause of actions had arisen to the complainant in consequence of any such promises, the same accrued more than six years before the filing of the bill, and serving the defendant with any process. And that he never did promise, as in the bill declared, at any time within six years before the serving of this process upon him. He further stated, that in the year 1792, said West and his family were turned out of the possession of said West farm, by legal process, and all their furniture and goods were put into the highway; a part of which furniture and goods were carried away by the complainant, and a part removed with said West and his family to the defendant's house, from whence said West removed again in the course of eight or nine months, and carried with him the principal part of his said furniture and goods: and that the residue, left with the defendant, he had always been ready to deliver to any person authorized to receive it.

The said Randall then stated, what had been

done with the notes and demands, which said West held against other persons. And insisted, that by virtue of the assignment and release made to him as beforementioned, in the year 1801, by said West, all the demands and securities mentioned in said bond of defeasance were assigned and transferred to him. And that he could not be compelled to account in any manner for the same. And as to that part of the bill, which charged the said Randall with any promises or engagements to convey said lands and tenements to the said West, or his heirs at law, he pleaded the statute of frauds of the state of Rhode-Island, by which any such promise, or agreement respecting lands must be in writing, in order to be binding on the parties. He also explicitly denied, that he ever made any such promises or agreements either in writing or otherwise. He also insisted, that the other heirs set forth by him in his answer ought to have been made parties to this bill. An account of monies received and expended on account of the first mentioned deed was also filed; but he refused to render any account of the rents and profits of the said estates, because he asserted and maintained, that the just and equitable interest in the same was in him.

Tristram, Burgess & Bridgham, for plaintiff. Mr. Searle, for defendants.

STORY, Circuit Justice. This cause came on to be heard at the last term of this court upon the bill, answers, and depositions, and other evidence, and was then argued by counsel. The bill is, in substance, a bill against the defendants, as survivors of four trustees, for a discovery and account of certain real and personal estate, alleged to have been conveyed to them by one William West in trust for the payment of his debts, and the charges of the trust, and the surplus to be held for his benefit. The plaintiff, as one of the heirs at law, of the said William West, claims title to an eleventh part of the surplus, and the bill prays general relief. There are other charges in the bill, which I will by and by notice. The other heirs at law of William West, are not made parties to the bill, nor is his personal representative. And no reason is assigned in the bill for the omission. The answer of Randall names all the other heirs, and alleges them to be within the jurisdiction of the court, and insists upon their being necessary parties. And this is the first question presented for our decision.

Before I proceed to consider this question, or any other presented in the case, I must beg leave to enter my protest against the irregularities and defects apparent upon the pleadings. There is some apology to be found for these in the fact, that there exists no state court of equity in this district; and that as yet the bar have had no great experience in causes of this nature on the equi-

ty side of this court. It is, however, indispensable, that the whole proceedings should assume more shape and finish, and attain that accuracy and precision, without which it is extremely difficult to administer the principles of chancery jurisprudence. I shall, therefore, for the future, insist upon more attention on these heads, and shall not hesitate to dismiss the bills, unless they assume more exactness. In the present cause, I shall proceed to the merits of the questions, which have been argued, without embarrassing it with doubts or difficulties arising from other sources.

And in the first place, as to the question already stated. It is a general rule in equity, that all persons materially interested, either as plaintiffs or defendants in the subject matter of the bill ought to be made parties to the suit, however numerous they may be. The reason is that the court may be enabled to make a complete decree between the parties, may prevent future litigation by taking away the necessity of a multiplicity of suits, and may make it perfectly certain, that no injustice shall be done, either to the parties before the court, or to others, who are interested by a decree, that may be grounded upon a partial view only of the real merits. Mitf. Eq. Pl. 29, 144, 220; Coop. Eq. Pl. 33, 185; 2 Madd. 142; Gilb. Forum Rom. 157, 158; 1 Har. Ch. Prac. (New Ed.) p. 25, c. 3; Leigh v. Thomas, 2 Ves. Sr. 312; Cockburn v. Thompson, 16 Ves. 321; Beaumont v. Meredith, 3 Ves. & B. 180; Hamm v. Stevens, 1 Vern. 110. When all the parties are before the court, it can see the whole case; but it may not, where all the conflicting interests are not brought out upon the bill. Gilbert, in his Forum Romanum (page 157), states the rule, and illustrates it with great precision. "If," says he, "it appears to the court, that a very necessary party is wanting; that without him no regular decree can be made; as where a man seeks for an account of the profits or sale of a real estate, and it appears upon the pleadings, that the defendant is only a tenant for life, and consequently the tenant in tail cannot be bound by the decree: and where one legatee brings a bill against an executor, and there are many other legatees, none of which will be bound either by the decree, or by the account to be taken of the testator's effects, and each of these legatees may draw the account in question over again at their leisure; or where several persons are entitled as next of kin under the statute of distributions, and only one of them is brought on to a hearing; or where a man is entitled to the surplus of an estate under a will, after payment of debts, and is not brought on; or where the real estate is to be sold under a will, and the heir at law is not brought on. In these, and all other cases, where the decree cannot be made uniform, for as on the one hand the court will do the plaintiff right, so on the other hand they will take care, that the de-

fendant is not doubly vexed, he shall not be left under precarious circumstances, because of the plaintiff, who might have made all proper parties, and whose fault it was, that it was not done." The cases here put are very appropriate to the case at bar. That in respect to legatees probably refers to the case of a suit by one residuary legatee, where there are other residuary legatees; in which case it has often been held that all must be joined in the suit. Parsons v. Neville, 3 Brown, Ch. 365; Cockburn v. Thompson, 16 Ves. 321; Sherrit v. Birch, 3 Brown, Ch. 229; Atwood v. Hawkins, Finch, 113; Brown v. Ricketts, 3 Johns. Ch. 553. But where a legatee sues for a specific legacy, or for a sum certain on the face of the will, it is not in general necessary, that other legatees should be made parties, for no decree could be had against them, if brought to a hearing (Haycock v. Haycock, 2 Ch. Cas. 124; Dunstall v. Rabett, Finch, 243; Attorney General v. Ryder, 2 Ch. Cas. 178; Atwood v. Hawkins, Finch, 113; Wainwright v. Waterman, 1 Ves. Jr. 311); and in general no person against whom, if brought to a hearing, no decree could be had, ought to be made a party (De Golls v. Ward, 3 P. Wms. 311, note). And when a party is entitled to an aliquot proportion only of a certain sum in the hands of trustees, if the proportion and the sum be clearly ascertained and fixed upon the face of the trust, it has been held, that he may file a bill to have it transferred to him without making the persons, entitled to the other aliquot shares of the fund, parties. Smith v. Snow, 3 Madd. 10. The reason is the same as above stated, for there is nothing to controvert with the other cestuis que trust. I am aware, that it has been stated by an elementary writer of considerable character, that one of the next of kin of an intestate may sue for his distributive share, and the master will be directed by the decree to inquire and state to the court, who are all the next of kin, and they may come in under the decree. Coop. Eq. Pl. 39, 40. This proposition may be true sub modo, but that it is not universally true, is apparent from the authority already stated. See Bradwin v. Harpur, Amb. 374; 2 Madd. 146; Gilb. Forum Rom. 157.

The rule, however, that all persons, materially interested in the subject of the suit, however numerous, ought to be parties, is not without exception. As Lord Eldon has observed, it being a general rule, established for the convenient administration of justice, it must not be adhered to in cases, to which consistently with practical convenience it is incapable of application. Cockburn v. Thompson, 16 Ves. 321. And see Wendell v. Van Rensselaer, 1 Johns. Ch. 349. Whenever, therefore, the party supposed to be materially interested is without the jurisdiction of the court; or if a personal representative be a necessary party, and the right of representation is in litigation in the proper ecclesiastical court; or the bill itself seeks a discovery of the necessary parties: and, in either case, the facts are charged in the bill, the court will not insist upon the objection; but, if it can, will proceed to make a decree between the parties before the court, since it is obvious, that the case cannot be made better. Mitf. Eq. Pl. 145, 146; Coop. Eq. Pl. 39, 40; 2 Madd. Ch. Prac. 143; 1 Har. Ch. Prac. c. 3. Nor are these the only cases; for where the parties are very numerous, and the court perceives, that it will be almost impossible to bring them all before the court; or where the question is of general interest, and a few may sue for the benefit of the whole; or where the parties form a part of a voluntary association for public or private purposes, and may be fairly supposed to represent the rights and interests of the whole; in these and analogous cases, if the bill purports to be not merely in behalf of the plaintiffs, but of all others interested, the plea of the want of parties will be repelled, and the court will proceed to a decree. Yet, in these cases, so solicitous is the court to attain substantial justice, that it will permit the other parties to come in under the decree, and take the benefit of it, or to shew it to be erroneous, and award a re-hearing; or will entertain a bill or petition, which shall bring the rights of such parties more distinctly before the court, if there be certainty or danger of injury or injustice. Coop. Eq. Pl. 39; 2 Madd. 144, 145; Cockburn v. Thompson, 16 Ves. 321. Among this class of cases are suits brought by a part of a crew of a privateer against prize agents for an account, and their proportion of prize money. There, if the bill be in behalf of themselves only, it will not be sustained; but if it be in behalf of themselves, and all the rest of the crew, it will be sustained upon the manifest inconvenience of any other course; for it has been truly said, that no case can call more strongly for indulgence, than where a number of seamen have interests; for their situation at any period, how many were living at any given time, how many are dead, and who are entitled to representation, cannot be ascertained; and it is not a case, where a great number of persons, who ought to be defendants, are not brought before the court, but are to be bound by a decree against a few. Good v. Blewitt, 13 Ves. 397; Leigh v. Thomas, 2 Ves. Sr. 312. Contra, Moffatt v. Farquharson, 2 Brown, Ch. 338; Brown v. Harris, 13 Ves. 552; Cockburn v. Thompson, 16 Ves. 321. So also is the common case of creditors suing on behalf of the rest, and seeking an account of the estate of their deceased debtor, to obtain payment of their demands; and there the other creditors may come in, and take the benefit of the decree. Leigh v. Thomas, 2 Ves. Sr. 312; Cockburn v. Thompson, 16 Ves. 321; Hendricks v. Franklin, 2 Johns. Ch. 283; Brown v. Ricketts, 3 Johns. Ch. 553; Coop. Eq. Pl. 39, 186. But Sir John Strange said, there was no instance of a bill by three or four to have an

account of the estate, without saying they bring it in behalf of themselves and the rest of the creditors. Leigh v. Thomas, 2 Ves. Sr. 312; Coop. Eq. Pl. 39. And legatees seeking relief and an account against executors may sue in behalf of themselves and all other interested persons, when placed in the same predicament as creditors. Brown v. Ricketts, 3 Johns. Ch. 553. Another class of cases is, where a few members of a voluntary society, or an unincorporated body of proprietors, have been permitted to sue in behalf of the whole. seeking relief and an account against their own agents and committees. Such was the ancient case of the proprietors of the Temple Mill Brass Works (Chancey v. May, Finch, Prec. 592); and such were the modern cases of the Opera House, the Royal Circus, Drury Lane Theatre, and the New River Company (Lloyd v. Loaring, 6 Ves. 773; Adair v. New River Co., 11 Ves. 429; Cousins v. Smith, 13 Ves. 542; Coop. Eq. Pl. 40; Cockburn v. Thompson, 16 Ves. 321). There is one other class of cases, which I will just mention, where a lord of a manor has been permitted to sue a few of his tenants, or a few of the tenants have been permitted to sue the lord, upon the question of a right of common, or a parson has sued, or been sued by some of his parishioners, in respect to the right of tythes. In these and analogous cases of general right, the court dispense with having all the parties, who claim the same right, before it, from the manifest inconvenience, if not impossibility of doing it, and is satisfied with bringing so many before it. as may be considered as fairly representing that right, and honestly contesting in behalf of the whole, and therefore binding, in a sense, that right. 2 Madd. 145; Coop. Eq. Pl. 41; Mitf. Eq. Pl. 145; Adair v. New River Co., 11 Ves. 429. But even in the case of a voluntary society. where the question was, whether a dissolution and division of the funds, voted by the members, was consistent with their articles, the court refused to decree, until all the members were made parties. Beaumont v. Meredith, 3 Ves. & B. 180. The principle, upon which all these classes of cases stand, is, that the court must either wholly deny the plaintiffs an equitable relief, to which they are entitled, or grant it without making other persons parties; and the latter it deems the least evil. as it can consider other persons as quasi parties to the record, at least for the purpose of taking the benefit of the decree. and of entitling themselves to other equitable relief, if their rights are jeoparded. Of course, the principle always supposes, that the decree can, as between the parties before the court, be fitly made, without substantial injury to third persons. If it be otherwise. the court will withhold its interposition.

The same doctrine is applied, and with the same qualification. to cases, where a material party is beyond the jurisdiction of the court. as if the party be a partner with the defendant, and resident in a foreign country, so that he cannot be reached by the process of the court. There, if the court sees, that without manifest injustice to the parties before it, or to others, it can proceed to a decree, it acts upon its own notion of equity, without adhering to the objection. Coop. Eq. Pl. 35; Mitf. Eq. Pl. 146; Cowslad v. Cely, Finch, Prec. 83; Darwent v. Walton, 2 Atk. 510; Walley v. Walley, 1 Vern. 484, 487; Milligan v. Milledge, 3 Cranch [7 U. S.] 220. The ground of this rule is peculiarly applicable to the courts of the United States; and therefore, if a party who might otherwise be considered as material by being made a party to the bill, would from the limited nature of its authority oust the court of its jurisdiction, I should strain hard to give relief as between the parties before the court; as for instance, where a partner, or a joint. trustee, or a residuary legatee, or one of the next of kin, from not being a citizen of the state, where the suit was brought, or from being a citizen of the state, if made a plaintiff, would defeat the jurisdiction, and thus destroy the suit, I should struggle to administer equity between the parties properly before us. and not suffer a rule. founded on mere convenience and general fitness, to defeat the purposes of justice. Russell v. Clarke, 7 Cranch [11 U. S.] 69, 98.

I have taken up more time in considering the doctrine as to making parties, than this cause seemed to require, with a view to relieve us from some of the difficulties pressed at the argument, and to show the distinctions (not always very well defined) upon which the authorities seem to rest. Apply them to the present case. The plaintiff claims as heir an undivided portion of the surplus, charged to be in the defendants' hands and possession. No reason is shown on the face of the bill, why the other heirs, having the same common interest, are not parties to it. The answer gives their names, and shows them within the jurisdiction of the court, and as defendants. they might have been joined in this suit without touching the jurisdiction of the court, for they are all resident in this state. As plaintiffs they could not be joined without ousting our jurisdiction. for then some of the plaintiffs would have been citizens of the same state as the defendants. Strawbridge v. Curtiss, 3 Cranch [7 U. S.] 267. Now in the first place, the other heirs might. if parties. controvert the very fact of heirship in the plaintiff, and that would touch the very marrow of his right to the demand now in question. The fact, however, is not denied or put in issue by the answer, and therefore as to the present defendants it forms no ground of controversy. But they insist, that the present suit will not close their accounts; and that the other heirs may sue them again, and controvert the whole matter now in litigation. and thus vex them with double inconveniences and perils. This is certainly true. and it is as certain, that they could not be made plaintiffs without ousting the present plaintiff of his remedy here.

They might have been made defendants; but the question is, whether the plaintiff is compellable so to make them, unless they deny his heirship, or they collude with the defendants. If there be no controversy between him and them, he could have no decree against them at the hearing; and it would be strange, if when he has nothing to allege against them, he must still name them as defendants in his bill. I agree to the general doctrine, that where a residuary legatee sues, he must make the other residuary legatees parties; and I think it analogous to the present case. But there the rule would not apply, if the other residuary legatees were in a foreign country, or without the reach of the jurisdiction of the court. The case of the next of kin put by Gilbert in the passage before cited is identical with the present. Gilb. Forum Rom. 157, 158. But there the same exception must be implied. And even in a case, where a mistake in a legacy of an aliquot part of the personal estate was sought to be rectified, and the next of kin were admitted to be necessary parties, —as to which, however, as the executor represents all parties in interest as to the personal estate, a doubt might be entertained, whether under the peculiar circumstances of this case, they were necessary defendants (Peacock v. Monk, 1 Ves. Sr. 127; Lawson v. Barker, 1 Brown, Ch. 303; 1 Eq. Cas. Abr. 73, p. 13; Anon., 1 Vern. 261; Wainright v. Waterman, 1 Ves. Jr. 311),—the court dispensed with their being made parties, it appearing, that they were numerous, and living in distant places, and the matter in dispute being small, and the plaintiff a pauper (Bradwin v. Harpur, Amb. 374). This rule is not then so inflexible, that it may not fairly leave much to the discretion of the court; and upon the facts of the present case, it being impossible to make the other heirs plaintiffs consistently with the preservation of jurisdiction of the court, or to make them defendants from any facts, which can be truly charged against them, I should hesitate a good while, before I should enforce the rule; and if the cause turned solely upon this objection, I should not be prepared to sustain it. Clarke v. Russell, 7 Cranch [11 U. S.] 69, 98. There is, indeed, a difficulty upon the face of the bill, that it shows no reason, why the other heirs were not made parties as plaintiffs; and if there had been a demurrer, it might have been fatal. But the answer seems to set that right, by disclosing the citizenship and residence of the other heirs; and in this respect, relying on the facts as a defence, it may well aid the defects of the bill.

There is, however, a more serious objection to this bill for the want of parties; and that is, that the personal representative of William West is not brought before the court, and for this no reason is assigned in the bill. Now it is to be considered, that the bill charges the defendants with trust property, personal as well as real, and prays an account and payment of the plaintiff's distributive share of each. I do not say, that the heir or next of kin

cannot in any case proceed for a distributive share against a third person, having in his possession the personal assets of the ancestor, without making the personal representative a party; but such a case, if at all, must stand upon very special circumstances, which must be charged in the bill. The administrator of the deceased is in the first place entitled to his whole personal estate in trust for the payment of debts and charges, and as to the residue in trust for the next of kin. The latter are entitled to nothing, until all the debts are paid; and they cannot proceed against the immediate debtor of the deceased in any case, any more than legatees or creditors, unless they suggest fraud and collusion with the personal representative, and then he must be made a party, or some other special reason be shewn for the omission. Newland v. Champion, 1 Ves. Sr. 105; Utterson v. Mair, 4 Brown, Ch. 270; s. c. 2 Ves. Jr. 95; Alsager v. Rowley, 6 Ves. 751; Bickley v. Dodington, 2 Eq. Cas. Abr. 78, 253. It is, therefore, in general, a fatal objection in a bill for an account of personal assets, that the administrator is not a party: nor is this objection repelled, if there be none at the time, unless there be some legal impediment to a grant of administration. Humphreys v. Humphreys, 3 P. Wms. 348; Griffith v. Bateman, Finch, 334. Now upon the facts of this case it is apparent, that William West died insolvent, and if so, it would be decisive against the plaintiff's title to any portion of the personalty. And as to the real estate, as that is also liable in this state to the debts of the intestate, this fact would be equally decisive of his title to any share in the real trust property. This shews, how material to the cause the personal representative of the intestate is, since he is ex officio the representative in cases of this sort of the creditors. But upon the general ground, without reference to these special facts, I think, that the personal representative of William West, not being a party, is a well founded objection to proceeding to a decree. I am aware, that a want of parties is not necessarily fatal, even at the hearing, because the cause may be ordered to stand over to make further parties (Anon., 2 Atk. 14; Coop. Eq. Pl. 289; Jones v. Jones, 3 Atk. 111); but this is not done of course; and rarely, unless where the cause as to the new parties may stand upon the bill and the answer of such parties. For if the new parties may controvert the plaintiff's very right to the demand in question, and the whole cause must be gone over again upon a just examination of witnesses, it seems at least doubtful, whether it may not be quite as equitable to dismiss the cause without prejudice, so that the plaintiff may begin de novo. Gilb. Forum Rom. 159. If this cause necessarily turned upon this point alone, I should incline to adopt this course.

There is another objection to the bill of a different character; and that is, that it is multifarious, involving distinct matters, which do not affect all the defendants. For instance,

the bill only charges, that the West farm was conveyed by the trust deed to the trustees for payment of debts, and demands an account respecting this property from the defendants as surviving trustees. Then there comes a distinct charge against Randall, of having fraudulently procured a forged assignment of the bond of defeasance given by the trustees upon the execution of the trust conveyance for his own use and benefit, without any averment of a collusion, or any suggestion of participation by the other trustees. Then there is another distinct charge in the bill, that certain real estate of William West, called the Wheeler farm, was mortgaged to one Simeon Potter, and that Randall, at the request of West, from certain monies in his hands belonging to West, and at his request, paid off the mortgage, and fraudulently procured (not saying from whom) deeds thereof, conveying the same to himself (Randall), and other persons unknown, for his own benefit. Now there is not the slightest pretence or charge in the bill, or evidence, that the other deceased trustees, or the defendant Phillips, were parties to this transaction. It is a distinct matter inter alios acta, and most improperly put into the bill; for it is no where charged in the bill, that the Wheeler farm was ever conveyed to the trustees upon trust for payment of the debts of William West. Now, nothing is better settled, than that the court will not permit several matters perfectly distinct and unconnected, to be put into a bill against one defendant; a fortiori not where there are several defendants, and the matters do not apply to some of them. Mitf. Eq. Pl. 147; Coop. Eq. Pl. 182. The objection would be fatal on demurrer; and where it involves material interests, not properly before the court, or produces embarrassment and confusion in administering equity, I see no reason why it should not be deemed equally fatal at the hearing, at least to justify a dismissal of the bill without prejudice.

There is another charge in the bill, which it may be as well to dispose of in this connexion; and that is, that the defendants, in July, 1810, being called upon by William West, to settle and conclude their trusts, and re-convey and deliver the property remaining in their hands under the trust deed, promised so to do; but ever neglected so to do. And afterwards in 1814, in William West's last sickness, Randall admitted to West, that he ought to surrender up the property, that he and the defendant Phillips, had been amply paid for all their costs, charges and trouble, and promised to settle the trusts, and forthwith to deliver up all the estates and property to the heirs of William West; and then charges, that the defendants had in fact received more money than all their charges and disbursements, and all the debts paid by them for William West.

Now to this charge, (I meddle not with the question of its correctness in point of law, or precision in point of averment) the defendant Randall, in his answer to the amended bill in which they are contained, has interposed an express denial, and has further relied upon the statute of limitations as a bar to the supposed promise, it not having been made within six years before the filing of the bill. The defendant Phillips, has never answered to this charge, never having been required by the plaintiff to answer the amended bill; and the only answer by him in the case, is to the original bill. This is an irregularity, which, if any thing turned materially on this charge, or if the cause could be upon any grounds sustained by the plaintiff, would be fatal, unless cured by some further order of the court as to Phillips. I pass it over now, for the purpose of bringing another point into view; and that is, the charge itself is expressly denied by Randall, and there is no testimony in the case to support it, except that of Samuel West, one of the children and co-heirs of William West, whose deposition was read at the hearing, subject to all exceptions. The question is, whether he is a competent witness to prove the facts. I am of opinion, that he is not. He is directly interested in the facts he is called to establish; he is a co-heir, and claims the same rights as the plaintiff. It approaches very near to the case of one devisee, on a trial of an ejectment brought by another devisee against the heir at law, offered as a witness to prove the testator's sanity; and in such case, he has been held to be incompetent, although the verdict would not have been evidence for or against him, for he has a direct and immediate interest in establishing the facts. Phil. Ev. 50. And even if Samuel West were a competent witness, I cannot say, that his testimony is coupled with such circumstances as ought to outweigh the explicit denial in the defendants' answer. What would have been the effect of the plea of the statute of limitations to an original promise, like that stated, supposing it to be proved, it is not now necessary to consider. If it be considered merely as a recognition of a trust already legally created and existing, it is not perceived that the statute could well be applied to such a case, for the trust would continue to attach itself to the property conveyed. But if considered as an original promise creating a trust, or attempting to create one, it would be liable to other more powerful objections; for even independent of the statute of frauds, parol proof is never admitted to raise a trust standing in contradiction to the written conveyances of the parties. Roberts, Frauds, 10. And see Movan v. Hays, 1 Johns. Ch. 339. Upon the statute of frauds, the case is yet stronger; and even as a mere contract for a grant of an equitable estate in lands, it would be void for not being in writing, under the act of Rhode-Island on that subject. Rhode-Island Laws (1798) p. 473; Hughes v. Moore, 7 Cranch [11 U. S.] 176.

Having adverted to several objections to the bill in its original concoction, and to the materials for decision, I will now proceed to state the reasons, that the bill cannot be sustained upon the general merits of the case, as disclosed in the pleadings and testimony, even as to the defendant Randall. And first, all considera-

tion of the facts charged in the bill, in respect to the Wheeler estate, may be dismissed in a few words. (1) Because the proper parties are not before the court to make a decree, supposing the facts ever so distinctly proved; nor could they, as strangers to the other transactions in the bill, be properly joined as parties. (2) Because the facts themselves are denied by the answer of Randall, and are not proved by any sufficient testimony of the plaintiff. The case is exceedingly weak and defective in this respect.

And next as to the West farm. The bill charges, that this farm was conveyed by William West in fee simple, to the defendants and the two other deceased trustees or mortgagees, (it is immaterial which they are called) on the 19th day of July, 1792, and on the same day a bond of defeasance was executed by the trustees, whereby on re-payment of the sums which should be advanced by them on his account, and indemnifying them for their charges and expenses about the business of William West, as stated in the bond, they bound themselves to re-convey the same estate to West. It charges also, that the same farm, which was then under mortgage to one Allen, was redeemed from that mortgage by the defendants, by monies received upon the sales of parcels of the trust estate. Then comes the charge alluded to, respecting a certain assignment of the same bond, purporting to be signed and sealed by West on the tenth of March, 1801, and to assign and convey the same bond, and all the monies due thereon, and all his right and title to the lands mentioned therein, to the defendant Randall, and his heirs, &c., for the consideration of $1,000. This assignment the bill charges never to have been sealed by West. but to have been written and signed by him, and kept by him as an escrow unsealed, until January, 1809, when the instrument was fraudulently procured and sealed by Randall, and afterwards was recorded. This is a very serious charge, and it is matter of surprise, that there is not a tittle of evidence in the cause even to afford a coloring of suspicion to sustain it. The defendant Randall, expressly avers, that it was sealed, executed and delivered bona fide to him, for a valuable consideration, according to its purport. The other defendant, Phillips, in his original answer, averred its due execution and genuineness; but avers it to have been executed without consideration, and merely for the purpose of qualifying William West as a witness in a suit in equity brought by the defendant to redeem the West farm from the mortgage of Allen; and Phillips accordingly claims a right in it, as an instrument executed for his benefit as well as Randall's. Now it is perfectly clear, that the answer of one co-defendant, is not in general evidence against another; and there is nothing in the present case, to take it out of the general rule. Phoenix v. Assignees of Ingraham, 5 Johns. 426; Phil. Ev. 266; 1 Madd.

Ch. Prac. 242; Field v. Holland. 6 Cranch [10 U. S.] 26; Clarke's Ex'rs v. Van Reimsdyk, 9 Cranch [13 U. S.] 156; Wych v. Meal, 3 P. Wms. 311; Coop. Eq. Pl. 200. The deposition of Phillips, too, has been taken in this cause, to the same effect. Under the circumstances of the case, he is not a competent witness, as he has a direct interest, and in his answer prays that interest to be sustained, as against Randall. His testimony, therefore, must be rejected. And if admitted, it would not outweigh Randall's answer; and certainly leaves wholly unsupported, the charge of fraud in procuring the assignment. Supposing the assignment made as Phillips has declared, it would deserve very grave consideration, whether a grantor or his heirs could ever, in any court of law or equity, be permitted to claim title to land which he had expressly released, to qualify him as a witness. It seems to me, that to entertain such a claim, would be productive of the grossest frauds, and defeat the very purposes of public justice. Upon the evidence before me, however, I am bound in point of law, to consider the assignment to have been made bona fide for a valuable consideration.

Supposing this to be true, still the plaintiff's counsel deny its sufficiency in point of law, to extinguish the title of the assignor in the equity of redemption of the trust property. The objection is, that no conveyance of real estate in Rhode-Island is valid, unless it be by deed executed in the presence of witnesses, and acknowledged by the grantor, and duly recorded in the town registry. The counsel for the defendants admit this to be true as to third persons; but not as to the grantors or their heirs. And my opinion is, that the distinction is well founded. The act of Rhode-Island declares, in the first section, "that no estate of inheritance or freehold, or for a term exceeding one year in lands or tenements, shall be conveyed from one to another by deed. unless the same be in writing, signed, sealed and delivered, by the party making the same, and acknowledged before an assistant, judge or justice. by the party or parties, who shall have sealed and delivered it, and recorded, or lodged to be recorded in the town clerk's office, where the said estates lie." The second section then declares, that all bargains, sales, and other conveyances of any lands, &c., whether for passing any estate of freehold or inheritance, or for term of years, and all deeds of trust and mortgages whatsoever, thereafter executed, shall be void, unless they shall be acknowledged and recorded as above said: "Provided always, that the same between the parties and their heirs, shall nevertheless be valid and binding. Rhode-Island Laws (Ed. 1798), pp. 263, 264." Now it is observable, that neither of these sections requires any witnesses. They require only, that the conveyance shall be by deed, which may well be without any witness, and as between the parties and their heirs, give complete effect to such deeds, with-

out any acknowledgment or recording. Nor does the fourth section of the act (Id. pp. 264, 265), in my judgment, control this construction. It only provides for compelling a party, if living, to acknowledge his deed, and after his death a mode of proving it, which shall be equivalent to the party's acknowledgment; and in each of these cases, the execution of the deed must be by subscribing witnesses to the deed. And then the deed is of efficacy, not only as to the parties and their heirs, but as to all other persons. If a conveyance be signed, sealed and delivered, and duly acknowledged by the grantor and recorded, it seems to me, that it is a good conveyance of the land against all persons, under the laws of Rhode-Island, even though there be no witnesses to the deed. The assignment in the present case, is sufficiently proved to have been signed, sealed, and delivered by the grantor, though there are no witnesses to the deed; it has not been duly recorded or acknowledged; but as between the present parties it cannot be deemed void, whatever might have been the case as to a subsequent purchaser without notice.

But supposing the assignment were not sufficient in point of law, to convey the land, it would form a title in equity sufficient to repel the plaintiff's claim. It would authorize a court to decree a conveyance of the legal estate from the heirs of William West, if the legal estate were in them; and at most they could here possess only an equity of redemption. There is too, in the assignment, an express covenant for farther assurance of the land. What pretence can there then be, to sustain the plaintiff's claim against a person having the legal estate, and an equitable assignment of the equity of redemption? There can be none. The very scintilla juris is extinguished.

This, then, puts an end to the case, and shews that the plaintiff has no merits in his claim, even if he could get over other serious, I had almost said, insuperable obstacles to success, which meet the court in every direction. Among these obstacles the lapse of time occupies no inconsiderable a place. The original conveyance and bond of defeasance, were executed in 1792. The assignment of the bond was made to Randall in 1801, and was publicly recorded in 1809. The testator died in 1814, and the original bill in this case, was filed in November term, 1816. No attempt was ever made during William West's life, to set aside the assignment, or to procure a settlement of the claims now urged by a suit at law, or in equity. This long acquiescence is too difficult to account for, upon any supposition inconsistent with the bona fide character of the assignment to Randall. I merely hint at this, not meaning to rely on it. Let the bill be dismissed with costs. Bill dismissed.