OAKLEY and another vs. HIBBARD.

ASSIGNMENT FOR BENEFIT OF CREDITORS — WHEN MAY BE REVOKED. Where a party who was not in failing circumstances, or unable to pay his debts, made an assignment of certain property to a trustee, to sell the same and pay off certain of his debts in a particular order, and the trustee entered upon the execution of the trust, and after paying off part of the debts, *Held*, that the assignor might lawfully revoke the assignment, and sell the remainder of the property to the assignee, as against any of the creditors who had not been paid, and who had no notice of such assignment. MILLER, J., *dissenting.* Otherwise, if such creditors had done any thing by which they signified their acceptance of its provisions.

APPEAL from the District Court for *Milwaukee* County.

*Jesse Oakley and Hezekiah B. Loomis* filed their bill in equity against *William B. Hibbard*, which he answered, and the complainants put in a general replication. The cause was heard upon bill, answer and replication and exhibits, no proofs being produced. The district court decreed that the defendant pay to the complainants $706.15, with interest from February 16, 1846, with costs of suit, from which decree he appealed. The substance of the bill, answer and exhibits is stated in the opinion of the court, but more fully in the dissenting opinion of Judge MILLER.

*Randall & Ogden*, for appellees.

*Levi Hubbell*, for appellant.

IRVIN, J. This cause comes up from the county of Milwaukee, on an appeal from the final decree of the district court, made in favor of the complainants in February last, when it was heard upon bill and answer.

By the bill of the complainants, it appears that "one Bostwick O'Connor, then doing business as a merchant at Troy, in the county of Walworth, executed and delivered to Hugh L. Smith and J. Clark Smith his certain promissory note, bearing date on that day, and thereby promised to pay $600, with interest from the date of said note, to them, the said Hugh and J. Clark Smith, by the name of Smith and Brother, or to their order, at the office of the Wisconsin Fire and Marine Insurance Company, at Milwaukee, eighteen months after the date of said note," "and the said Smith and Brother afterward, and before the said note became due, indorsed and delivered the same to the complainants; that the said O'Connor, on the 1st of March, 1844, made an assignment of his merchandise, notes, etc., to *William B. Hibbard*, the defendant, for the purpose of paying off the debts therein mentioned and in the order directed, and that the said *Hibbard* took upon himself the execution of the trust, and,

after paying off a part of the debts of the said O.'Connor, he became the purchaser of the balance of the trust fund, from said O'Connor, leaving the debt due to the complainants unpaid. The defendant, by his answer, which is considered responsive to the bill, admits the creation of the trust, and that he entered upon the execution of it, took into his possession the effects mentioned therein, and that after paying a part of the debts (those of preference), the said O'Connor revoked the assignment and sold to him the remainder of the property, notes, etc., that were so assigned. The answer also states that the complainants never had notice of the assignment; nor does it appear (whether they had notice or not) that they ever took any steps to signify their acceptance of the trust and the provisions therein contained. It is nowhere alleged that O'Connor was then in failing circumstances, or was then, or at any time since, unable to pay all of his debts. The assignment appears to have been entirely voluntary on the part of O'Connor, and without consideration on the part of *Hibbard*, and must be construed, under such circumstances, to be a mode or convenience adopted by O'Connor for the settlement and winding up of his business. It is a principle well enough established, that if the creditors of O'Connor who were included in the assignment had done any thing by which they signified their acceptance of the provisions of the assignment, *Hibbard* would have been liable to them; but, as it is asserted by *Hibbard*, that no notice of the assignment was ever given to them (and it not otherwise appearing to the court), the only question for the court to decide is, whether O'Connor could revoke the assignment, and thereby discharge *Hibbard* from it; for, if he could, then, when it was revoked, *Hibbard* could as well purchase from him as any other person could. That he could revoke the assignment abundantly appears from the following authorities: Story's Eq., § 1036, p. 358; § 972, last clause; § 1045, p. 379; *Williams v. Everett*, 14 East, 582; *Tiernan v. Jackson*, 5 Pet. 580; and, when we take into

consideration the fact that, by the terms of the assignment, *Hibbard* was to account to O'Connor for the trust fund, the case remains without a doubt. A majority of the court are therefore of the opinion that the complainant is not entitled to the relief sought, and that his bill must be dismissed with costs.

MILLER, J., *dissenting.* By the bill in this case it appears that in August, 1843, Bostwick O'Connor, then a merchant, executed and delivered to Hugh L. Smith and J. Clark Smith, his promissory note of same date for $600, with interest, and before said note became due they indorsed it to the complainants, the present holders thereof. That in March, 1844, the said O'Connor, then doing business as a merchant, and being in possession of a large quantity of goods and a large amount of choses in action, in all exceeding in amount $3,000, by a deed of assignment assigned and set over to defendant, all the said goods and choses in action, particularly set forth in an inventory thereto attached. That said assignment was made by said O'Connor in trust, for the pupose of securing the payment of certain debts due from said O'Connor and therein particularly set forth and described. That said *Hibbard* did not, at the time, pay or contract to pay to said O'Connor, any consideration for said goods and accounts, except promising to account with him for the balance that might remain after the payment of the said debts. That the aforesaid note was mentioned and described in said assignment, and the payment thereof was thereby provided for, after the other debts therein mentioned, amounting to $732, should have been paid. That said *Hibbard* immediately entered upon the execution of said trust and executed and delivered to said O'Connor his bond in the penalty of $3,000, conditioned well and truly to obey or cause to be obeyed the instructions contained in said assignment; and took the said goods, etc., into his possession and commenced selling said goods and collecting the said debts. And the bill further charges

that the defendant has collected the greater portion of the debts so assigned and has sold and received pay for the whole or a large portion of the same goods, etc., and has received more than enough to pay both the debts mentioned in said deed before complainants, amounting to $732, and this note.

The bill further charges that defendant refuses to pay said note, and as an excuse for such refusal, pretends that he has settled with said O'Connor and taken up his said bond, and paid him in full for the said goods, etc., which complainants contend he had no right to do.

The bill then calls upon the defendant to answer all and singular the allegations in said bill of complaint and particularly to set out the said assignment with the invoice and inventory delivered to him, and to give a copy of his said bond, etc., and that on the final hearing said defendant may be decreed to render a full and true account of all moneys received from him, etc., and to pay said complainants what, upon said account, may remain after the payment of the said debts of $732, until the debt of complainants be fully paid, and if sufficient is not sold and collected, to decree that he shall proceed to sell and collect the same and apply the proceeds to said debt, etc., and such further relief as shall be agreeable to equity, etc. The bill is not sworn to.

The defendant by his answer under oath, admits that the note was executed and delivered by said O'Connor to Smiths and he has been informed that said note was indorsed to complainants. He also admits that about the 1st of March, 1844, O'Connor was doing business as a merchant, and that he then, by a certain instrument under his hand and seal, assigned and set over to defendant all his right, title and interest of, in and to all sums of money then due, or to become due in a certain schedule therein mentioned (which is lost or mislaid), and also of a certain store of goods, fixtures and furniture; but denies that they were particularly set down in an invoice or that any such was made out. And the said defendant admits,

that at the time of the said assignment the goods, etc., together with the accounts, etc., were considered to be of the value of $2,700. And the defendant says that the said assignment was made in trust for the purpose of securing the payment of certain debts then due and to become due and owing by said O'Connor and particularly mentioned and described in said deed, and that no other consideration passed for the promise on the part of defendant to account to said O'Connor for the avails of said goods, etc., when sold at their invoice prices, unless they should not all be sold before the maturity of the said last named note described in said instrument; in which case the goods so remaining on hand should be held in trust subject to the order of the creditors of said O'Connor.

The answer admits that the said note mentioned and described in the bill was one of the debts for which payment thereof was duly provided after the other debts, amounting to $732, due to various individuals, all of which were duly scheduled in the said deed, etc., and admits the making and delivering said assignment. Defendant executed and delivered to O'Connor a bond in the penalty of $3,000, conditioned for the true and faithful performance of all the instructions mentioned and contained in said deed and immediately thereafter entered upon the execution of his said trust, in the manner and form set forth in the bill. The defendant denies that he has collected the whole or a great portion of said notes, etc., or has sold and received pay for the whole or a greater portion of said goods so assigned to him or more than enough to pay the said debts of $732 preceding the note of complainants.

And the said defendant answering states that the stock of goods so assigned was a poor and refuse lot, and a large portion of said notes, etc., were worthless, and that in order to make sale of said goods he was under the necessity of purchasing a large quantity of other goods

more salable, for the purpose of making a market for said goods, etc.·

And the defendant saith, that immediately after he had commenced selling said goods and collecting said notes, etc., and long before he had been able to realize enough to pay off the amount of debts preceding this debt, he proceeded to pay off such preferred debts and has since paid the whole amount thereof.

And the defendant says that at the time of the said assignment, the said debts of $732 were the only debts due ; and that said assignment was made voluntarily, and in good faith for the purpose mentioned therein. That he believes and so charges the truth to be that none of said creditors were parties or privies to said assignment, or had notice thereof, at the time or since, until after said assignment had been revoked and canceled, but were entirely ignorant of the same, save the creditors for the said $732.

And the said defendant says: that about the 1st of October, 1844, said O'Connor proposed to him to revoke said assignment and sell to him the entire stock of said goods, notes, etc., before assigned, and accordingly a bargain was made and defendant purchased the same for the sum of $2,000, which was the full value thereof ; and that he paid to said O'Connor the sum of $1,200, in cash and goods, and $800 in debts owing by said O'Connor, including the said $732. That at said sale no inventory was taken, nor has he kept a separate and distinct account of the quantity of goods sold nor the amount of money received therefor, nor is he able to state what amount of debts was collected, nor what quantity of cash remains on hand ; hence he has no data by which to render a true account, etc.

And the defendant submits and insists that he is not liable to complainants in the capacity of trustee, etc., and that by said deed he was only liable to account to said O'Connor—that said assignment was voluntary and revocable at the pleasure of the assignor, and has been

revoked, and he is no longer a trustee but a purchaser for a valuable consideration, and no way liable to complainants.

Copies of the deed of assignment and bond are annexed to the answer, and the name of J. Clark Smith appears as a witness to the said deed.

The plaintiff filed a general replication.

The parties went to trial upon the bill, answer and replication.

The questions presented are :

1. Whether this assignment does not vest a legal title in the assignee—and whether the trustee could purchase from the debtor and hold the fund adversely to the creditors ?

2. Whether the part of the answer alleging the purchase is not new matter in avoidance, which should be proven ?

3. Whether the other creditors and Bostwick O'Connor should not be parties ?

It is not necessary to the validity of a deed of assignment for the benefit of creditors that the creditors should be consulted.

The creditors need not be parties to the assignment. It is enough if the assignment be assented to by the assignee, unless the creditors repudiate it. If the creditors have notice of the trust in their favor, and they assent to it, it will be sufficient to pass the estate to the assignee for their use; and being for their benefit, their assent is presumed until the contrary is shown. Such assignments as this take effect from their execution, and when creditors are not parties to the instrument, they may take the benefit of the trust by notice to the trustee within a reasonable time, and before a distribution is made of the property. *Brashear v. West.* 7 Pet. 608; *Marbury v. Brooks,* 7 Wheat. 556; id. 11; id. 78; *Nicholl & Vandewater v. Mumford,* 4 Johns. Ch. 529; *Sheperd v. Mc-Evers et al.,* id. 136; *Nicholl & Vandewater v. Mumford,* id. 522; 2 id. 307; *Wheeler v. Sumner,* 4 Mason, 183; *Halsey v. Fairbank & Whitney,* id. 2106; 8 Leigh, 272.

The debts were a sufficient consideration for the assignment. 7 Wheat. 58; 11 id. 78; *Halsey v. Fairbank & Whitney*, 4 Mason, 206.

It is not necessary to determine whether this assignment was revocable before notice to the creditors or at any time, as it appears to me that the answer of the defendant puts this question out of the case. He acknowledges that he accepted the trust, by taking possession of the assigned property, to the amount of about $2,700; that he gave his bond, according to the terms of the deed, for the faithful execution of the trust; that he paid all the debts preceding the debt in suit, and he then bought from the assignee the remainder of the assigned property, after he had mixed the goods, etc., with new goods purchased by himself, and never had an inventory of the assigned goods. And it appears that the name of one of the payees and indorsers of this note is subscribed to the deed and bond as a witness—who would be particularly interested in the transaction; and if he then held the note, had direct notice, and if he had then indorsed it, he had notice as such indorser, who, no doubt, would give information of the transaction to the present plaintiffs. In addition to the legal presumption of notice to these plaintiffs, this circumstance tends to strengthen that presumption. When creditors are not parties to the instrument, they may take the benefit of the trust by notice to the trustee within a reasonable time, and before a distribution is made of the property. The trustee, after he accepted the trust, was bound to give notice to all the *cestuis que trust* of any matter touching the trust property, and should have kept the trust property distinct from his own. The defendant was bound by the deed and his bond to execute the trust honestly and faithfully. It will not do to permit a trustee to take possession of the trust fund, with or without inventory or schedule, upon giving his bond; and after making sale of a portion of the estate, paying part of the debts, and then return to the debtor or assignor the residue of the estate, with-

out the consent of the unpaid creditors. Nor can he purchase the trust estate himself, at his own sale, or from the assignee, without the consent of the creditors. He can do no act to prejudice the *cestuis que trust*, or acquire an interest in the trust estate adverse to theirs, but especially in equity, must he make good the trust. The trustee after entering upon the duty and discharging part of the debts out of the trust estate, cannot throw it up, but is as much bound to execute it as an executor. And where a trustee has accepted the trust, creditors for whose benefit an assignment is made by a debtor, are entitled to claim under it without becoming parties to it, or signifying their assent to it, when the deed of assignment, as in this case, does not require such assent, and they cannot be deprived of their rights under such assignment without a refusal or waiver of their claim under it. *New England Bank v. Lewis*, 8 Pick. 113, and cases there cited; Story's Eq. Pl., § 209, page 188; *Pritchard v. Hicks*, 1 Paige's Ch. 270; *Maule v. Dickey*, 1 Johns. Ch. 153; 3 id. 671; 1 Edw. Ch. 396; 11 Wheat. 78; 6 Vesey, 661; 11 Wend. 247; 20 Johns. 338; 1 Johns. Ch. 339; id. 129; 3 id. 261; 4 id. 136; 18 Pick. 46; 9 id. 84; 4 id. 518; 17 Mass. 552; 1 Paige, 402; 1 Hopk. 524; Fonb. Eq. 458; *Prevost v. Goetz*, Peters' C. C. 364; 3 Peters' Dig. 678.

The defendant cannot state positively and satisfactorily, that the complainants had no notice of this trust, as there are so many channels through which information may have been communicated to them. His deed and bond and possession, the payment of all previous creditors, the witness to the papers, the interest of the assignee to give the information, together with their application for payment, and suit immediately after this debt became due, raise an irresistible presumption that they had timely notice. But even if they had not received notice before the defendant purchased the property, it is immaterial, as having accepted the trust and executed it in part, he could not purchase and hold the trust property

adversely to the interests and claims of the *cestuis que trust.*

The first two propositions are now disposed of. Hence it is the same in the consideration of the case, whether the matter in the answer, which is alleged to be new matter, had been proven or not; although I am inclined to think that the matter referred to, being in answer to the charging part of the bill, need not be proven. *Smith v. Clark & Smith*, 4 Paige, 368; id. 89; 1 id. 391; 1 Barb. Ch. Pr. 35, 36.

It is not necessary that the other creditors should be made parties to this bill. By the deed of assignment, after providing for the payment of certain claims, amounting to about $400, it is directed that the rest of the creditors should be paid as *preferred claims, each in its order as set forth therein;* and, by the answer, it appears that all the creditors previous to the complainants have been paid; and, therefore, a decree in favor of these complainants, for the amount of the note in suit, will not prejudice the claims of the creditors remaining on the list. There is no common interest between these plaintiffs and the subsequent creditors which is necessary to require them to be joined. Story's Eq. Pl., §§ 204, 205, 206, 207; *Pritchard v. Hicks*, 1 Paige, 273; *Jones v. Jones*, 3 Atk. 111; *Brown v. Ricketts*, 3 Johns. Ch. 556; *West v. Randall*, 2 Mason, 181.

This is not a suit about trust property, or the title thereto, but is a suit to enforce payment out of a trust fund in the hands of the defendant. The defendant acknowledges to the receipt of property, more in amount than to satisfy this debt and all previous thereto, and acknowledges that he did not keep such accounts as to enable him to return how much thereof he has sold or collected. There is no account, therefore, to be taken. Nor are these plaintiffs in the light of residuary creditors, where, possibly, the assignor should be a party, particularly if there were not sufficient assets to pay the last or residuary claim. It would not have been improper to

include the assignor as a party in this suit, but he could not be considered as a necessary party ; nor do I believe that it is necessary either to aver or prove the insolvency of the assignor.   In my view of the case, the fund can be followed by these creditors, in the hands of the defendant, without regard to the present circumstances of the assignor, O'Connor, or the alleged purchase by the defendant, which I consider to be void.   For these reasons I dissent from the opinion of the majority of the court.