## Buckley Motors, Inc., v. Amp, Inc.

*Landis & McIntosh,* for plaintiff.

*Myers, Myers & Flower,* for defendant.

JACOBS, J., August 11, 1960.

### Statement of the Pleadings and Issues Raised

The pleadings in this case consist of a complaint and an answer. In the complaint plaintiff asks for damages and injunctive relief. Plaintiff operates a Ford garage and defendant operates a manufacturing plant adjoining the rear of plaintiff's property. During the winter of 1957 to 1958, plaintiff used the rear of its property as a lot on which to park new trucks consigned to it for sale. It was noticed in the spring of 1958 that the paint on these trucks had been damaged by some sort of deposit. Defendant's oil-fired furnace, which is used partly for manufacturing and partly for heating the plant of defendant, is located on the portion of defendant's building which adjoins plaintiff's parking lot. Plaintiff has not used its parking lot since the spring of 1958 for fear of further damage to automobiles parked on the lot. Plaintiff claims that some substance coming from the smokestack of defendant caused the damage to its truck. The factual issue raised is whether or not the damage to plaintiff's trucks was caused by some substance ejected from defendant's smokestack. If it was not so caused, then plaintiff is not entitled to relief. If it was so caused, several other issues are raised: (1) What was the nature of the invasion? Was it trespassory or non-trespassory, i.e., was it actual particles falling on plaintiff's trucks or was it caused by fumes and gases?

(2) Was the invasion intentional or unintentional? (3) Is plaintiff entitled to damages because of such invasion? (4) Should such invasion be enjoined? . . .

*Discussion of the Questions of Fact and Law Involved*

Most of the findings of fact are plainly shown by the testimony. The finding that the damage to the paint surfaces was caused by particles of solid material coming from defendant's smokestack was based on the testimony of Mr. Buckley and Dr. Graham that they saw particles falling on the trucks in question, together with the expert testimony of Dr. Graham as to the effect of such particles on the painted surfaces. The fact that he might have been mistaken as to the chemical composition of the particles does not negative the fact that he found that some of the particles did actually cause damage in his experiments. His testimony further showed that such residual particles do not occur where no. 2 fuel oil is burned. This testimony, plus the fact that the damage was greatest near defendant's smokestack and became less as it got farther away from defendant's smokestack, convinced the chancellor that the damage was caused by particles emanating from defendant's smokestack and that plaintiff's stack, which was located on the opposite side of the parking lot, had not caused the damage.

Since defendant's manufacturing plant is the only manufacturing plant in this immediate area, the chancellor, after examination of the testimony in regard to the other business establishments in the immediate area, came to the conclusion that the area was primarily commercial rather than industrial.

Inasmuch as particles from defendant's smokestack were thrown on to the land of plaintiff and on to plaintiff's trucks, defendant has committed a trespass on plaintiff's land. It was an unprivileged entry on the

land of plaintiff by throwing solid particles on plaintiff's land. Plaintiff does not claim that defendant was engaged in an ultra-hazardous activity nor does it show that defendant was negligent. The case thus falls under that group of torts known as intentional invasions of land.

Pennsylvania has recognized that the throwing of particles on the land of another can be actionable trespass. In Conti v. New Castle Lime and Stone Company, 94 Pa. Superior Ct. 321, a verdict in trespass for damage to real estate in favor of plaintiff was sustained. In that case, defendant bought limestone screenings and brought them upon a small tract of land occupied by its plant and there reduced them to a fine powder, large quantities of which escaped into the air and were carried by the wind and deposited upon plaintiff's land destroying his crops. The court held that defendant was liable for any substantial injury to a neighbor resulting from such use of its land.

Since the invasion in this case is an unprivileged entry of particles on the land of another it does not fall within the group of nontrespassory invasions commonly known as nuisances. The elements necessary to a recovery are therefore covered by §158 of the Restatement of Torts covering liability for intentional invasions of land rather than section 822 of the Restatement of Torts, covering nontrespassory invasions. Section 158 of the Restatement of Torts provides as follows:

"One who intentionally and without a consensual or other privilege

"(a) enters land in possession of another or any part thereof or causes a thing or third person so to do, or

"(b) remains thereon, or

"(c) permits to remain thereon a thing which the actor or his predecessor in legal interest brought

thereon in the manner stated in §§160 and 161, is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests."

In order for plaintiff to recover, it is necessary for plaintiff to show that the invasion by defendant was intentional. Defendant in this case did not know that its furnace was causing the damage to the trucks on plaintiff's lot during the winter of 1957 and 1958. So far as the testimony shows, defendant did not know that its furnace was propelling any particles on to plaintiff's parking lot when the damage to the trucks was caused. In order for defendant to be liable for an intentional trespass, it is not necessary that he perform his act for the purpose of entering on plaintiff's land. It is sufficient if he knows that his conduct will result in such an entry inevitably or to a substantial certainty. See Restatement of Torts §163, comment c.

There is nothing to show that defendant had any knowledge that starting the fire in the furnace would emit solid particles which would fall on plaintiff's land. Therefore, defendant could not know that by installing the furnace an entry on plaintiff's land would result.

In Waschak v. Moffat, 379 Pa. 441, at page 447, Justice Stearne observed that:

"If an owner of land erects a factory upon it, which he operates, his act is, of course, *intentional* when he ignites fires under the boilers which emit smoke or fumes and operates noisy machinery."

This is not inconsistent with a finding that AMP's act in emitting the particles was unintentional. Although AMP's act in lighting the fires was intentional, the ejection of the particles was an unknown and unanticipated consequence.

On the basis of the record as it stands, the trespass of defendant in the first instance and at the time the

damage to the trucks was caused was unintentional, and plaintiff's claim for damages caused in the winter of 1957 to 1958 must be denied.

A different situation exists, however, beginning with the spring of 1958 when defendant was informed that its furnace was emitting particles which were falling on plaintiff's land and causing damage to painted vehicles parked there. The further use of defendant's furnace and oil burner became intentional at that time and thereafter became a continuing trespass, and equity has the power to enjoin continued trespasses on land.

In Gardner v. Allegheny County, 382 Pa. 88, p. 102, it is said:

"It is hornbook law that a Court of Equity possesses jurisdiction to enjoin repeated trespasses on land, as well as to enjoin a nuisance. In Tri-Cities Water Co. v. Monessen, 313 Pa. 83, 85, 169 A. 159, it is said: 'There is no doubt equity has power to grant a restraining order preventing actual or threatened trespasses of a continuing and permanent character: Gray v. Phila. & Reading Coal & Iron Co., 286 Pa. 11'."

Despite the fact that defendant is guilty of continuing trespass depriving plaintiff of the use of its parking lot, many factors must be considered before the court can make an adequate and proper decree. These must be considered before the court can determine what is the appropriate remedy; an injunction or damages in lieu of an injunction, or both, or any other proper remedy. The factors to be considered are fully set forth in the Restatement of Torts, ch. 48, §§933 through 951. A few of those factors which are not now properly demonstrated before the court are: (1) The relative adequacy to plaintiff of injunction versus other remedies; (2) the relative hardship likely to result to defendant if injunction is granted and to plaintiff if it is denied; (3) the interests of third

persons and the public, and (4) the adequacy of measures of self help.

For the above reasons, an experimental order will be entered.

### Conclusions of Law

1. Defendant during the winter of 1957 and 1958 committed a trespass against the lands of plaintiff by expelling solid particles from its smokestack on to the land and personal property of plaintiff, causing material damage to the personal property of plaintiff.

2. Such trespass was unintentional on the part of defendant.

3. Plaintiff is not entitled to recover damages for the injury caused by defendant's unintentional trespass.

4. Defendant was notified of its trespass on or about April 17, 1958, and has continued to commit the same trespasses since said date.

5. Said continuing trespasses are intentional.

6. Plaintiff is entitled to relief against said continuing trespasses.

7. Sufficient facts have not been presented to the chancellor to enable him to determine the appropriate remedy.

### Experimental Order

And now, August 11, 1960, at 10:30 a.m., defendant is directed to conduct experiments and tests to determine whether or not the injury can be eliminated by alterations, repairs, changes or attachments, or any other work done to its heating plant and smokestack, whereby the injury may be eliminated by cleaning, and to determine the probable cost of the same, and plaintiff is directed to investigate ways and means whereby the injury may be eliminated by cleaning, treating or covering motor vehicles parked by it on its parking lot, or by any other action taken by it if

the invasion continues as at present, and to determine the probable cost of said measures. Both parties are directed to report the results of such tests, experiments and estimates by oral testimony to the chancellor at a hearing to be held on October 14, 1960, at 10 a.m., in the main court room at the Court House in Carlisle, together with such other testimony as the parties may desire to present in regard to the appropriate remedy, following which testimony the chancellor will hand down a decree nisi.