## Crown Cork and Seal, Inc. v. Aetna Casualty and Surety Company

*Robert R. Reeder*, for plaintiff.
*Dean F. Murtagh, Richard M. Shusterman, Richard K. Masterson* and *Robert M. Britton*, for defendant.

PRATTIS, *J.*, October 9, 1980—Crown Cork and Seal, a New York corporation with major offices in Philadelphia and plants in diverse sections of the

United States, brought the instant petition for declaratory judgment in this court to seek a ruling on its rights under certain contracts of insurance entered into at diverse times with defendants Aetna Casualty and Surety Company, Insurance Company of North America, Employer's Mutual Liability Insurance Company, Continental Insurance Company and Lumbermen's Mutual Casualty Company.

During part of its corporate history, Crown Cork and Seal owned the Mundet Cork Corporation, which included the Thermal Insulation Contract Division, a manufacturer of products containing asbestos.

Beginning in the fall of 1976 petitioner was named as defendant in a series of personal injuries actions in courts of diverse locations throughout the United States. These actions sought compensation for personal injuries to the claimants therein arising from their work with asbestos products. It is uncontradicted that the claimants in question came in contact with products manufactured by petitioner or subsidiary corporations of petitioner, which products contained asbestos. Claimants claimed the asbestos caused their injuries.

At the time this petition was filed, 91 such cases had been filed against petitioner throughout the United States. At the time this case was argued in July, 1980, 650 cases had been filed against petitioner. Petitioner claims that all of these cases arise because of its ownership of Mundet Corporation and its Thermal Insulation Division.

Aetna Casualty & Surety Company was the primary liability insurance carrier for Mundet for the years 1950 through July 1, 1960. Aetna Casualty & Surety Company was the primary liability

insurance company for Crown Cork and Seal for the years July 1, 1960 through May 1, 1966. The Insurance Company of North America was the primary liability and excess carrier for Crown Cork and Seal for the period of May 1, 1966 to May 1, 1970. Employer's Mutual Liability Insurance was the primary liability excess carrier for Crown Cork and Seal for the period of May 1, 1970 through May 1, 1974. Continental Insurance Company was the primary carrier for Crown Cork and Seal from May 1, 1974 to July 1, 1976, with excess insurance being carried by Lumbermen's Mutual Casualty Company. From July 1, 1976 to the present, petitioner has been self-insured.

Crown Cork and Seal alleges that prior to the filing of the petition for declaratory judgment, it had spent $75,000 in the settlement of claims, as hereinbefore discussed, and $15,000 in the defense of such claims. Crown Cork and Seal had sought to have *defendants* defend the claims and pay the settlement or verdict, if any, but in each case, where such defense and indemnity was sought, it was denied.

The crux of the present case, as in almost all of the other "asbestos cases" turns on the resolution of the question of whether the thousands of sufferers who have endured physical deterioration and death from exposure to asbestos were individuals who had suffered "accidents" within the meanings of the insurance policies carried by various manufacturers and distributors of asbestos products. Whether there had been an "accident" has been construed to depend on whether claimant manifested symptoms of the physical deterioration during the policy period or whether the claimant had been exposed to the injury causing substance dur-

ing the policy period. In the former instance, carriers on the risk during the frequently many years that it takes for the physical deterioration to manifest itself can successfully avoid defending and paying. In the latter instance, the various insurance companies on the risk throughout the period of exposure to the endangering substance can each be said to have a proportionate share of responsibility for the defense and indemnification. Thus, insurance companies invariably argue for the "manifestation theory," and the claimants invariably argue for the "exposure theory." It is unnecessary at the state of this litigation to elect one theory or the other since the only issue before the court is whether the preliminary objections filed by Aetna Casualty and Surety Company can prevail.

In the preliminary objections, Aetna Casualty and Surety Company argues that the petition for declaratory judgment fails to attach the complaints that claimant has filed against petitioner and consequently determination of coverage cannot be made absent such complaint, that the petition does not set forth sufficient facts to enable Aetna to defend coverage as to each claimant's claim and finally that this court is without jurisdiction to decide the declaratory judgment petition absent the joinder of the individual claimant's actions against petitioner.

## DISCUSSION

The Declaratory Judgments Act, 42 Pa.C.S.A. §7532, provides: "Courts of record within their respective jurisdictions, shall have power to declare rights, status, and other legal relations. . . ."

Section 7533 of that act provides further:

"Any person interested under a deed, will, written

contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . contract . . . and obtain a declaration of rights, status or . . . legal relations thereunder."

The Supreme Court of Pennsylvania has held that the declaratory judgment device is an appropriate means for resolving controversies relating to the extent of coverage under a policy of insurance. This is so whether the petition is brought by the insured after a denial of coverage by the insurer, Friestad v. Travelers Indemnity Co., 452 Pa. 417, 306 A. 2d 295 (1973), or by the insurer seeking to determine the extent of his obligation to the insured: Liberty Mutual Insurance Co. v. S.G.S. Co., 456 Pa. 94, 318 A. 2d 906 (1974). The court clearly endorsed the declaratory judgment as a viable means of resolving such controversies even when alternative forms of action are available and even when a dispute as to the facts exists, making the declaratory judgment something more than the mere construction of a written document.

What is essential for determination and what the petitioner seeks in a declaratory judgment are answers to the questions relative to specific written policies. Was there a contract of insurance? What risk is insured against? Are the claimants individuals who have been subjected to that risk? All these are questions which can be answered in a declaratory judgment proceeding.

In the present case, the extent of the underlying litigation is undisputed. The resources of defendant and plaintiff are more than ample to collect and disseminate whatever information is required for the adjudication of specific claims. If dates, medical reports, identity of parties, identity of com-

panies, beneficiaries and the like are significant issues, discovery is available.

The more difficult question is whether, having resolved these questions, an action for declaratory judgment can subsist where, as here, the injured persons whose claims have been asserted against the insured, have not been joined in a declaratory judgment proceeding between the insured and his putative insurers. The leading Pennsylvania cases seem to suggest a negative answer. Thus, in Keystone Insurance Co. v. Warehousing and Equipment Corporation, 402 Pa. 318, 165 A. 2d 608 (1960), the court held that an injured party who had secured a default judgment against an insured was a necessary party in a declaratory judgment action brought by the insurer to deny coverage to the insured. Similarly, in Ins. Co. of State of Pa. v. Lumbermens Mutual Casualty Co., 405 Pa. 613, 177 A. 2d 94 (1962), the court held the insured and the claimant were necessary parties to a declaratory judgment action brought by one insurer for concurrent coverage from another. Both plaintiff and defendant in that declaratory judgment action had issued policies to the insured covering the time of the accident. As Mr. Chief Justice Jones pointed out in his concurring opinion in Keystone Ins. Co. v. Warehousing and Equipment Corporation, supra, what was sought in these cases was the specific termination of the rights of a third party beneficiary of the insurance contract. In both Keystone and INA v. Lumbermens, supra, the insurance company was seeking a declaration with reference to coverage of a single incident.

Clearly these principles are reflected in the recently enacted Declaratory Judgments Act, 42 Pa.C.S.A. §7531 et seq., with the proviso in section 7540(a) that: "When declaratory relief is sought, all

persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. . . ." However, none of the prior Pennsylvania cases, now codified in section 7540(a), dealt with the use of the declaratory judgment process as applied to a real controversy between the insured and the insurer where the class of claimants is indefinite and to some extent even unknown. Thus, in Reifsnyder v. Pittsburgh Outdoor Advertising Co., 396 Pa. 320, 152 A. 2d 894 (1959), cited with approval in INA v. Lumbermens, supra, the court held that failure to join known minority shareholders prevented jurisdiction in equity because their "rights are so connected with the claims of the litigants that no decree can be made between them without impairing those rights." Similarly, in Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491 (1955), the parties alleged to be indispensable were the several Federal agencies that minutely regulated the defendant county airport and in Gavigan v. Bookbinders, Machine Operators and Auxiliary Workers Local Union No. 97, 394 Pa. 400, 147 A. 2d 147 (1959), a seniority dispute involved construction of an employment contract to which the employer was indispensable in litigation as in fact.*

In view of the court's holding in Friestad and Liberty Mutual Insurance Co. v. S.G.S., to deny the use of the declaratory judgment in the present case would be to deny its applicability in the circum-

---

*Significantly, in Friestad v. Travelers, supra, the failure to join a known claimant—which had in fact asked leave to intervene—was not considered as an impediment to the exercise of jurisdiction.

stance where it is most useful. If an insured has a real controversy for adjudication when there is one claim outstanding, how much more does he have a real controversy when faced with 600 claims. When the controversy is framed by the litigants as: Does "X" have rights under the contract of insurance between insured "A" and insurer "B," obviously there is a case and a controversy [and "X" is an indispensable party]. But when insured "A" sues insurer "B" to determine whether "A" or "B" must bear the cost of defending against 600 X's and to determine whether a single contract of insurance was written to cover the risk of loss to 600, or 700 or 1,000 X's that too presents a distinct case and controversy—between "A" and "B." The fact that every "X" is not present or, more likely, not known does not divest the court of jurisdiction.

A comparable problem is presented to the courts in class actions. There, the fact that *all* potential members of the class do not opt in does not prevent a binding adjudication as to those who do. Both class actions and declaratory judgment actions are designed to facilitate the resolution of numerous controversies through the litigation of one basic controversy. There is obvious merit in such a process even though *all* potential litigants are not present or bound. Hence, in the present case, an adjudication of the coverage controversy should at least prevent the present parties from relitigating that issue 650 times.

Accordingly, the preliminary objections of defendant Aetna Casualty and Surety Company should be overruled.